UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>      Plaintiff,<br><br> v.<br><br>STEVEN FISHOFF,<br>DESHAN GOVENDER,<br>WINSON TANG,<br>FEATHERWOOD CAPITAL, INC., and<br>JSF INVESTMENT CAPITAL INC.,<br><br>      Defendants. | Case No. 1:18-cv-07685 (ALC) (JLC) |

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR MONETARY RELIEF AGAINST DEFENDANT DESHAN GOVENDER**

Todd D. Brody
David C. Austin
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
Brookfield Place
200 Vesey Street
New York, New York 10281
(212) 336-0080

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ................................................................................................1

II.   ARGUMENT...........................................................................................................................2

    A.  Govender Misstates the Procedural History of the Case .......................................2

    B.  Govender Cannot Deny the Allegations of the Complaint or Deny Liability ......4

    C.  Reputational Harm is no Substitute for Disgorgement and Penalties..................5

    D.  The Commission Settlements Cited by Govender are Irrelevant .........................6

    E.  Govender's Financial Condition Does Not Preclude the Financial Relief Sought..............7

    F.  Govender Has Not Met His Burden to Demonstrate He Received Less for Sangamo......10

III.  CONCLUSION.....................................................................................................................11

## TABLE OF AUTHORITIES

*Miller v. SEC*, 998 F.2d 62 (2d Cir.), cert. den., 510 U.S. 1024 (1993) ..........................................5
*SEC v. AIC, Inc.*, 11-CV-176, 2014 U.S. Dist. LEXIS 105146 (E.D. Tenn. Aug. 1, 2014)............9
*SEC v. Alternative Green Techs., Inc.*, 11 Civ. 9056, 2014 U.S. Dist. LEXIS 173251
   (S.D.N.Y. Dec. 15, 2014)...........................................................................................................8
*SEC v. Am. Growth Funding II, LLC*, 16-CV-828, 2019 U.S. Dist. LEXIS 163258
   (S.D.N.Y. Sept. 23, 2019)..........................................................................................................6
*SEC v. Breed*, 01 Civ. 7798, 2004 U.S. Dist. LEXIS 7336 (S.D.N.Y. Apr. 29, 2004) .................10
*SEC v. Cope*, 14 Civ. 7575, 2018 U.S. Dist. LEXIS 127074 (S.D.N.Y. July 30, 2018),
   *aff'd*, *SEC v. DeMaison*, No. 18-2564, 2019 U.S. App. LEXIS 26476 (2d Cir.
   Aug. 30, 2019) ..........................................................................................................................7
*SEC v. Giordano*, RDB-14-3598, 2017 U.S. Dist. LEXIS 2435 (D. Md. Jan. 6, 2017)..................5
*SEC v. Golden Apple Oil & Gas, Inc.*, 2011 U.S. Dist. LEXIS 29525 (S.D.N.Y. March
   21, 2011) ...................................................................................................................................9
*SEC v. Gupta*, 569 Fed. Appx. 45 (2d Cir. 2014) ...........................................................................6
*SEC v. Integrity Fin. AZ, LLC*, 10 CV 782, 2012 U.S. Dist. LEXIS 6758 (N.D. Ohio
   Jan, 20, 2012)............................................................................................................................8
*SEC v. Jankovic*, 15 Civ. 1248, 2018 U.S. Dist. LEXIS 2281 (S.D.N.Y. Jan. 4, 2018).................8
*SEC v. Juno Mother Earth Asset Mgmt., LLC*, 11 Civ. 01778, 2014 U.S. Dist. LEXIS
   44752 (S.D.N.Y. March 31, 2014).............................................................................................4

*SEC v. Kane*, 97 Civ. 2931, 2003 U.S. Dist. LEXIS 5043 *13-14 (S.D.N.Y. March 31, 2003) ................................................................................................................5, 9
*SEC v. Kapur*, 11 Civ. 8094, 2012 U.S. Dist. LEXIS 169784 (S.D.N.Y. Nov. 29, 2012) ..........4, 7
*SEC v. Kelly*, No. 14-2827, 2019 U.S. Dist. LEXIS 141870 (D.N.J. Aug. 21, 2019) ......................9
*SEC v. Lorin*, 76 F.3d 458 (2d Cir. 1996) (*per curiam*) ................................................................10
*SEC v. Mahabub*, 15-cv-2118, 2019 U.S. Dist. LEXIS 151337 (D. Colo Sept. 5, 2019) ................9
*SEC v. Rajaratnam*, 918 F.3d 36, 43-44 (2d Cir. 2019) ..................................................................6
*SEC v. Rooney*, 11 C 8264, 2014 U.S. Dist. LEXIS 95101 (N.D. Ill. July 14, 2014) ............... 9-10
*SEC v. Rosenthal*, No. 10-1024-cv, 426 Fed. Appx. 1 (2d Cir. June 9, 2011) ...............................9
*SEC v. True N. Fin. Corp.*, 909 F. Supp. 2d 1073 (D. Minn. 2012)..................................................5
*SEC v. Whittemore*, 05 Civ. 869, 2010 U.S. Dist. LEXIS 75361 (D.D.C. Jul. 27, 2010) .............10

## I.   PRELIMINARY STATEMENT

Plaintiff Securities and Exchange Commission ("Commission") respectfully submits this Reply Memorandum of Law in Further Support of its Motion for Monetary Relief.

By consenting to the partial final judgment, Defendant Deshan Govender ("Govender") agreed that, for the purposes of this motion, the allegations of the Complaint would be deemed true. Notwithstanding, Govender repeatedly argues that he did not violate the law and that the facts alleged in the Complaint are wrong. The Court should reject Govender's belated attempts to litigate liability. Moreover, Govender's claims that he didn't violate the law – as well as his baseless *ad hominem* attacks against the Commission – demonstrate his lack of remorse and failure to appreciate the severity of his conduct, further justifying the civil penalty sought here.

Govender also makes the following arguments: (1) he has suffered enough by virtue of the reputational harm and his inability to find gainful employment resulting from this action; (2) the relief sought by the Commission against him is inconsistent with the relief that the Commission obtained from defendants in other unrelated cases; and (3) he does not have the financial resources to pay what the Commission seeks. Govender also claims that the money that he received from Steven Fishoff ("Fishoff") was not only related to Sangamo but was also for unrelated trading.

None of these arguments carries any weight. Govender received non-public information from his friend Winson Tang ("Tang") about the negotiations between Sangamo and Biogen. Govender tipped Fishoff and others about the confidential negotiations. The Fishoff group jointly made over $1.5 million on their Sangamo trades when the market price of Sangamo stock rose by over 38 percent. And Fishoff wired $222,788 to compensate Govender for the Sangamo information. The Commission respectfully submits that the record, the law, and all the relevant

circumstances warrant entry of an order directing Govender to pay disgorgement of $222,788, prejudgment interest of $56,391.91 and civil penalties of $668,364.

## II.     ARGUMENT

### A. Govender Misstates the Procedural History of the Case

Throughout Govender's opposition papers, he misrepresents the history of this action, theorizing that the Commission only filed this case against him to advance its case against Fishoff. First, Govender states that the Commission's action in New Jersey, where he was not a defendant but was identified as "Associate A," was filed in 2014. This is wrong. The New Jersey action was filed on June 3, 2015. Govender then states that "[a]fter almost 5 years and not getting anywhere in NJ on their complaint [and after the NJ action was administratively terminated] the SEC re-filed their complaint against me and others." This is completely inaccurate.

The Commission did not sue Govender and Tang in the initial action brought in New Jersey. At the time that the Commission filed its Complaint, a related criminal action was also commenced against Fishoff and others, but neither Govender nor Tang were criminally charged and Sangamo was not part of the criminal action. After Fishoff pleaded guilty, effectively concluding the criminal case, the Commission filed the present action in this Court. As explained to the Court, the action was filed in New York rather than simply amending the New Jersey complaint because of venue considerations specific to Govender and Tang. The New York action was not, as Govender claims, filed as a result of the New Jersey case being "administratively terminated"[1] or because the Commission had not gotten anywhere in the New Jersey action.[2]

---

[1] The fact that the case was "administratively terminated" was of little consequence. As the accompanying text order made clear, the case was taken off the court's active calendar until the conclusion of the criminal case and the Court stated that it "shall reopen the matter following receipt and review of the Government's final progress report or upon other good cause shown." (Docket #125). This termination was not merits-based and has now been lifted.
[2] Even while the stay was in place, the Commission entered into partial final consent judgments with several of the individual and entity defendants. The New Jersey action is now once again active.

2

Govender also states that Fishoff was only criminally fined $50,000, suggesting that the relief the Commission seeks from him is disproportionate. First, Fishoff was not just fined $50,000; he was also sentenced to 30 months in prison. Fishoff also agreed to settle the parallel civil forfeiture action, *United States v. The Contents of Wedbush Securities Account Number 8313 et al.*, Civil Action No. 17-5334, and to forfeit all seized property which, at the time of seizure, included $1.5 million in cash and additional millions in securities. Moreover, the criminal outcome for Fishoff does not relate to Sangamo at all, as Fishoff was never criminally charged for conduct concerning Sangamo; the criminal sanctions were based solely on the one charge to which he pleaded guilty. The Commission's Sangamo claims against Fishoff are still pending.

Govender further argues that the Commission acted inappropriately first when it sued him without giving him an opportunity to present his side and then when it moved forward with this motion for monetary relief. With respect to the filing of the lawsuit, the Commission staff met with or otherwise communicated with Govender's counsel on numerous occasions prior to bringing this action[3], both with respect to the evidence developed in the staff's investigation and with respect to settlement.[4]

Govender's complaints about the Commission proceeding with this motion after receiving his financial information are equally meritless. The Commission staff made clear to Govender and his counsel on numerous occasions that submitting financial information did not preclude the possibility that the Commission staff would determine, after such review, that it is nevertheless appropriate to seek monetary relief. Indeed, on June 11, 2019, Govender told the Court that "I do

---

[3] Govender admits in his opposition brief that the Commission contacted him in July 2018 (i.e. prior to the filing of the SDNY complaint in August 2018). He states that he was advised at that time by his counsel "not to do anything or take any action." Given this admission, it is hard to understand his complaint about the Commission's conduct.
[4] Govender's attempt to distinguish the Commission staff's communications with his counsel from communications directly with him ignores the fact that the staff was required to communicate with counsel.

3

not wish to try and settle a monetary fine with the SEC, [but would] rather [proceed] with the court to finalize this entire matter," suggesting that he well understood that possibility.[5]

### B. Govender Cannot Deny the Allegations of the Complaint or Deny Liability

In the consent signed by Govender (approved by his counsel) and entered by the Court on June 4, 2019 as part of the partial final judgment, Govender agreed that in any motion the Commission might file for monetary relief, (1) he "will be precluded from arguing that he did not violate the federal securities laws"; and (2) the allegations of the Complaint "shall be accepted as and deemed true by the Court." (Docket #50-2). While Govender states that "he is not admitting nor denying any of the complaint," he repeatedly denies or otherwise contests the allegations in arguing that no monetary relief should be ordered.[6] The consent judgment precludes him from doing so, and the Court respectfully should disregard Govender's attempts to deny liability, to deny the allegations of the Complaint, or to suggest that the allegations are without basis. *See SEC v. Juno Mother Earth Asset Mgmt., LLC*, 11 Civ. 01778, 2014 U.S. Dist. LEXIS 44752 *6-7 (S.D.N.Y. March 31, 2014) ("When a defendant enters a consent judgment … and agrees not to challenge the details of the Commission's complaint, courts accept the allegations in the complaint to be true when deciding the Commission's subsequent motion for monetary relief") (*citing SEC v. Kapur*, No. 11 Civ. 8094, 2012 U.S. Dist. LEXIS 169784 *15 (S.D.N.Y. Nov. 29, 2012) (rejecting defendants' attempts to characterize conduct as mild given the allegations in the Complaint)).

---

[5] The considerations underlying that determination are discussed below.
[6] *See, e.g.,* (1) "[m]y phone calls with Tang pertained solely to other technologies and not regarding his work relating to SGMO"; (2) "I was not part of their scheme and was only a part-time consultant;[6] (3) submitting phone records to document that the alleged December 16, 2013 call from Tang was "either an error from the SEC or a fabrication"; (4) arguing that the payment from Fishoff was not connected to the Sangamo tip; and (5) arguing that his other transactions in Sangamo demonstrate that he was not engaging in insider trading.

### C. <u>Reputational Harm is no Substitute for Disgorgement and Penalties</u>

Govender states that after the Commission brought its action against others in 2015 alleging insider trading relating to Sangamo, he suffered immense reputational harm and has been unable to find meaningful employment. As such, he argues that he has suffered sufficiently and that no monetary relief is warranted. As a preliminary matter, the Commission notes that any such collateral harm that Govender suffers is self-imposed. It is Govender who willingly risked his reputation and livelihood for a short-term financial windfall.

Govender's argument also has no basis in law. It is a fact that many people who are named as defendants in Commission enforcement actions suffer reputational harm or lose employment opportunities as a result. If it were the case that reputational damage and loss of employment were a substitute for disgorgement and penalties, it would be the rare case when an individual would be required to pay disgorgement and a penalty. As the court stated in *SEC v. Kane*, "[Kane's] financial problems, including his inability to work again as a stock broker, are the natural consequences of his fraudulent conduct... and if given the weight that Kane urges, a defendant's impecuniosity could preclude the imposition of a meaningful penalty in even those cases involving the most egregious fraud." 97 Civ. 2931, 2003 U.S. Dist. LEXIS 5043 *13-14 (S.D.N.Y. March 31, 2003). *See also SEC v. Giordano*, RDB-14-3598, 2017 U.S. Dist. LEXIS 2435 *7 (D. Md. Jan. 6, 2017) (rejecting argument that in light of a $25,000 state government fine, the "humiliation of bankruptcy, loss of business reputation, and loss of career", and his "dire present financial situation", "the punitive and deterrent purposes of the SEC action have already been satisfied").[7]

---

[7] *See also SEC v. True N. Fin. Corp.*, 909 F. Supp. 2d 1073, 1127 (D. Minn. 2012) (rejecting defendant's argument that "he has already suffered substantial financial and reputational damage"); *cf. Miller v. SEC*, 998 F.2d 62, 64 (2d Cir.) ("it is not enough to merely allege 'continuing embarrassment … in business relationships' as the basis for dissolving or modifying a decree"), *cert. den.*, 510 U.S. 1024 (1993).

### D. The Commission Settlements Cited By Govender Are Irrelevant

Govender cites three recent Commission settlements to show that the Commission is seeking disproportionate remedies from him in this *contested* litigation. This argument is unavailing because (1) the penalty sought here is appropriate and calibrated to the facts of this case and the financial benefits that Govender obtained through his role in the insider trading scheme; (2) the penalty amount sought from Govender is consistent with the penalty amount paid by Tang in his settlement; and (3) the other settlements cited by Govender are absolutely irrelevant.

The Commission only seeks a $668,364 penalty from Govender – three times Govender's personal gain from the Sangamo trading – even though the Court could have potentially imposed a penalty of up to $4.5 million (three times his tippees' total trading profits of $1.5 million). *See* 15 U.S.C. § 78u-1(a) (insider trading penalties up to three times the profit gained or loss avoided). The Second Circuit Court of Appeals has held that "a tippee's gains … are 'attributable to the tipper, regardless whether benefit accrues to the tipper.'" *SEC v. Gupta*, 569 Fed. Appx. 45, 48 (2d Cir. 2014). Govender is potentially liable for up to three times the tippees' profits even if Govender never traded. *SEC v. Rajaratnam*, 918 F.3d 36, 43-44 (2d Cir. 2019). As such, a lower penalty than the amount sought here would be unwarranted.

Second, the penalty amount that the Commission is seeking for Govender is consistent with (indeed, it is less than) the $750,000 penalty that it obtained in a settlement with Tang, who provided Govender with the confidential information that Govender then passed along.

Third, "[b]ecause the penalty framework is highly discretionary, 'prior decisions and consent decrees are of little comparative value for any individual matter.'" *SEC v. Am. Growth Funding II, LLC*, 16-CV-828, 2019 U.S. Dist. LEXIS 163258 *9-10 (S.D.N.Y. Sept. 23, 2019). This lack of value is demonstrated, on its face, from the very newspaper articles and press releases

that Govender submits as exhibits concerning the Commission's settlements with Elizabeth Holmes, MiMedex, and Carlos Ghosen. None of these settlements involved insider trading and the three times statutory penalty. While it is true that Elizabeth Holmes settled for a $500,000 penalty, Govender omits that she returned 18.9 million shares, was barred from serving as an officer or director, and would be unable to profit from her ownership interests until over $750 million was returned to shareholders; hardly a slap on the wrist. Likewise, Govender complains that Ghosen only paid a penalty of $1 million when he was said to have stolen $100 million from Nissan. In fact, as the press release makes clear, the undisclosed compensation that Ghosen arranged "was never paid out to Ghosen." Finally, the MiMedex settlement is entirely irrelevant as that was a settlement with a company. The responsible individuals did not settle and the Commission continues to seek significant financial relief from the individuals.

### E. **Govender's Financial Condition Does Not Preclude the Financial Relief Sought.**

Govender argues that because he cannot pay what the Commission is seeking from him, the Court should not order that relief.[8] The Court should reject this argument. As noted in the Commission's moving brief, financial hardship is not relevant to disgorgement. *See, e.g., SEC v. Cope*, 14 Civ. 7575, 2018 U.S. Dist. LEXIS 127074 *22 (S.D.N.Y. July 30, 2018), *aff'd*, *SEC v. DeMaison*, No. 18-2564, 2019 U.S. App. LEXIS 26476 (2d Cir. Aug. 30, 2019). Even with respect to the penalty, financial hardship is only one factor to be considered.[9] Govender's conduct was egregious and recurring, he had a high level of scienter, and his conduct harmed the securities market, all of which warrants a significant penalty regardless of financial condition.

---

[8] While Govender does not attach any financial documentation to his opposition brief, the Commission notes that Govender did provide such information to the Court by email dated July 12, 2019.
[9] *See Kapur*, 2012 U.S. Dist. LEXIS 169784 at *20 ("[T]he decision to impose civil penalties is in the court's discretion, and a defendant's financial condition is but one relevant factor.").

Govender also has not met his burden to demonstrate financial hardship. He has repeatedly told the Commission staff and the Court that he anticipates being able to obtain employment after the financial remedies are set.[10] As noted in the Commission's moving brief, courts often require that the defendant show current **and** future inability to pay. *See SEC v. Jankovic*, 15 Civ. 1248, 2018 U.S. Dist. LEXIS 2281 *21 (S.D.N.Y. Jan. 4, 2018). Even assuming that Govender does not currently have sufficient assets to pay the requested monetary relief, Govender is highly educated (he holds a Master's Degree with distinction in chemistry and biophysics), he is relatively young (48), and there is no reason to believe that he will not have the ability to pay his financial obligations in the future. *See SEC v. Alternative Green Techs., Inc.*, 11 Civ. 9056, 2014 U.S. Dist. LEXIS 173251 *16 (S.D.N.Y. Dec. 15, 2014) ("Segal is a licensed attorney. He can likely earn a living practicing law or, at a minimum, find employment in some capacity. Segal has therefore failed to demonstrate his current and future inability to pay."); *SEC v. Integrity Fin. AZ, LLC*, 10 CV 782, 2012 U.S. Dist. LEXIS 6758 *31 (N.D. Ohio Jan, 20, 2012) ("It would be pure speculation for the court to conclude that with a business background, Koeller would never be able to pay a penalty simply because of a current inability to pay").

Even Govender's present financial condition furnishes no basis for forgoing a monetary penalty. According to the sworn financial statement provided to the Commission staff, Govender has approximately $500,000 in equities (not including additional amounts in retirement accounts), he has more than $200,000 of equity in his home (even with a nearly $600,000 mortgage),[11] and in 2019, he earned approximately $7,000 on a monthly basis as a consultant.

---

[10] *See, e.g.* Govender status report dated August 30, 2019 ("I am unable to gain employment due to this unresolved issue); Govender email dated June 11, 2019 ("As you know, I have not been able to find work due to this matter being publicly disclosed and *furthermore not finalized*") (emphasis added).

[11] According to Zillo, Govender lives in a 4,475 sq. ft., 5 bedroom, 4 bathroom house, sitting on a 2.36 acre lot, with a pond, in Albany, NY, that he purchased for $804,000 in December, 2017 (well after the cases that purportedly destroyed his reputation were filed). https://www.zillow.com/homedetails/7-Turnberry-Ln-Loudonville-NY-12211/29697029_zpid/ Zillo estimates that the property is worth approximately $888,000. *Id*. According to

While Govender claims that he has a total negative financial worth of approximately $191,000, approximately $210,000 of his claimed liabilities is a "mortgage obligation for 1/3 share in home for parents." Notably, Govender does not claim a 1/3 share of his parents' home as a corresponding asset. And he does not actually appear to be a party to the mortgage instrument. Govender's actual mortgage obligations are, therefore, questionable at best. Govender also lists approximately $300,000 of liabilities relating to a family business (a country club and golf course), which he claims to own 25%. Given that this business is a corporation, it is unclear how Govender would be personally liable for its debts. Govender has also informed the Court that the family has "already engaged several brokers and agents to try and sell/liquidate the asset …." The sale of this asset would further reduce his claimed negative net worth by approximately $50,000 (based on his assertion that the asset is worth $250,000 and its liabilities are $300,000).

In sum, while Govender's financial condition may not be stellar by some standards, it does not warrant a complete elimination of the penalty or the imposition of a small penalty. *SEC v. Rosenthal*, No. 10-1024-cv, 426 Fed. Appx. 1, 7 (2d Cir. June 9, 2011) (court orders civil penalty equal to two times the illegal profits); *SEC v. Golden Apple Oil & Gas, Inc.*, 2011 U.S. Dist. LEXIS 29525 *3 (S.D.N.Y. March 21, 2011) ("even if Budd's allegations were credible, waiver would be inappropriate here"); *Kane*, 2003 U.S. Dist. LEXIS 5043 *13 ("claims of poverty cannot defeat the imposition of a civil penalty by a court").[12]

---

Realtor.com, the median sale price for houses in this area is $268,000. https://www.realtor.com/realestateandhomes-detail/7-Turnberry-Ln_Albany_NY_12211_M31860-52899. Govender's desire to live in luxury should not take precedence over the public interest in ensuring that he is appropriately sanctioned for his conduct in a way that would be effective in deterring him and others from engaging in similar conduct in the future.

[12] *See also SEC v. Mahabub*, 15-cv-2118, 2019 U.S. Dist. LEXIS 151337 *25 (D. Colo Sept. 5, 2019) (after weighing defendant's claimed financial status in the light most favorable to defendant, court orders defendant to pay civil penalty of $1,289,900); *SEC v. Kelly*, No. 14-2827, 2019 U.S. Dist. LEXIS 141870 (D.N.J. Aug. 21, 2019) (court orders defendant to pay six $150,000 penalties for each of the defendant's violations, stating that "while Becker's financial situation may be diminished from what it once was, it is not so dire as to render him unable to pay civil penalties"); *SEC v. AIC, Inc.*, 11-CV-176, 2014 U.S. Dist. LEXIS 105146 (E.D. Tenn. Aug. 1, 2014) (imposing civil penalty of $1,505,000 notwithstanding testimony and evidence of defendant's financial difficulties); *SEC v. Rooney*,

F. **Govender Has Not Met His Burden to Demonstrate He Received Less for Sangamo**

The requested disgorgement and penalty are based on $222,788 that Fishoff sent Govender in February 2015. While Govender states that "not all of the $222k wire was for SGMO", Govender does not attempt to allocate that amount between Sangamo and what he claims was for unrelated trading.

The SEC met its burden to demonstrate the amount of ill-gotten gains, and there is no evidence in the record that would warrant a lower amount. "[D]isgorgement need only be a reasonable approximation of profits causally connected to the violation, and *any risk of uncertainty in calculating disgorgement should fall on the wrongdoer* whose illegal conduct created that uncertainty." *SEC v. Lorin*, 76 F.3d 458, 462 (2d Cir. 1996) (*per curiam*) (emphasis added). Disgorgement "need not be figured with exactitude." *SEC v. Breed*, 01 Civ. 7798, 2004 U.S. Dist. LEXIS 7336 *9-10 (S.D.N.Y. Apr. 29, 2004). "The SEC only needs to offer a prima facie reasonable approximation of profits connected to the securities violation, and then the burden of proof shifts to the defendants to rebut the presumption *that all profits gained* while the defendants were in violation of the law constituted ill-gotten gains." *SEC v. Whittemore*, 05 Civ. 869, 2010 U.S. Dist. LEXIS 75361 *16 (D.D.C. Jul. 27, 2010) (emphasis added). This is exactly the case here. The SEC has provided the wire transfer records demonstrating the transfer of money from Fishoff to Govender. Govender admits that he received this money. He claims that not all of this money is related to Sangamo, but he provides no basis to calculate the amount he claims was unrelated to Sangamo. Because Govender has not met his burden of demonstrating that an amount other than the $222,788 sought by the Commission is a more appropriate disgorgement figure, the Court should order Govender to disgorge the full $222,788.

---

11 C 8264, 2014 U.S. Dist. LEXIS 95101 *10 (N.D. Ill. July 14, 2014) (ordering that defendant pay substantial penalty of $715,000 notwithstanding his claim of poverty).

10

### III. CONCLUSION

For the reasons stated above and in its moving brief, the Commission respectfully requests that the Court grant the Commission's motion for monetary relief by ordering disgorgement of $222,788, prejudgment interest of $56,391.91 and civil penalties of $668,364 against Govender.[13]

Dated: December 16, 2019

Respectfully submitted,

/s/ Todd D. Brody
Todd D. Brody
David C. Austin
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
Brookfield Place
200 Vesey Street
New York, New York 10281
(212) 336-0080

---

[13] At the Court's request, the Commission will submit a proposed judgment.