USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 9/28/20

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | |
| | : | |
| | : | |
| Plaintiff, | : | 1:18-cv-7685 (ALC) |
| -against- | : | |
| | : | <u>OPINION AND ORDER</u> |
| | : | |
| | : | |
| | : | |
| DESHAN GOVENDER, | : | |
| Defendant. | : | |
| | : | |
| | : | |
| | : | |

-----------------------------------------------------------x

**ANDREW L. CARTER, JR., United States District Judge:**

On August 23, 2018, The Securities and Exchange Commission ("SEC") brought this

action against Defendants Steven Fishoff, Deshan Govender, Winson Tang, Featherwood Capital

Inc., and JSF Investment Capital Inc., alleging violations Section 10(b) of the Securities

Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

(Compl. ¶ 5) The Complaint alleges that Fishoff led a group of stock traders in conducting an

insider trading scheme generating $1.5 million in illegally-obtained profits. (*Id.* ¶ 1). The SEC

alleges that "Fishoff used material non-public information obtained from a corporate executive at

a large, publicly-traded pharmaceutical company, Sangamo BioSciences Inc. ("Sangamo") to

trade Sangamo securities and to tip others who traded Sangamo securities." (*Id.* ¶ 2).

Specifically, Fishoff learned that Sangamo was negotiating a lucrative licensing agreement with

Biogen Idec Inc., another large pharmaceutical company, and traded in advance of the companies

announcing the licensing agreement on January 9, 2014. (*Id.*) After the announcement, the

market price of Sangamo stock allegedly rose by over 38 percent. (*Id.* ¶ 4).

Fishoff allegedly obtained the information through Govender, who "held himself out as a portfolio manager for a trading entity [Cedar Lane] controlled by Fishoff" and obtained the relevant "information from Tang, a high-level Sangamo executive and longtime friend of Govender." (*Id.*) Govender then tipped off Fishoff. (*Id.* ¶¶ 3, 11). Fishoff wired over $222,788 to Govender to compensate him for the tip. (*Id.* ¶¶ 4, 42).

The Complaint alleges that Govender "conducts busines, including activities relevant hereto, through BKG Strategic Advisory, LLC ("BKG"), a New York limited liability company he organized in March 2012 and controls…" (*Id.* ¶ 11). According to the Complaint, Govender passed additional, non-public information obtained from Tang to Fishoff for compensation prior to the Biogen scheme. (*Id.* ¶ 30). The Complaint alleges that "Govender knew, should have known, or was reckless in not knowing that the information about the Sangamo-Biogen negotiations that he received from Tang was material and non-public." (*Id.* ¶ 45). Additionally, when Govender provided this information to Fishoff and his associates, he allegedly "knew, should have known, or was reckless in not knowing that the information had been conveyed to him in breach of a fiduciary duty or similar obligation arising from a relationship of trust and confidence in exchange for a personal benefit" and that Fishoff and associates "would use the information Govender provided to trade securities and/or convey the information to others for the purpose of trading securities." (*Id.* ¶ 46).

As relevant here, the SEC sought "to restrain and permanently enjoin the Defendants from engaging, a final judgment "(a) ordering the Defendants to disgorge their ill-gotten gains, together with prejudgment interest thereon" and "holding each of the Defendants jointly and severally liable for disgorgement of the ill-gotten gains"; and "(b) ordering the Defendants to pay

civil monetary penalties pursuant to Section 21A of the Exchange Act" 15 U.S.C. § 78u-1. (*Id.* ¶ 6).

The SEC and Govender reached a settlement agreement pursuant to which the SEC filed a proposed partial consent judgment on February 1, 2019. (ECF No. 29). The court approved and finalized the partial consent judgment on June 4, 2019. (Consent Judgment). The consent judgment enjoined Govender from violating Section 10(b) in the future and provides that the court shall determine, upon the SEC's motion, "whether it is appropriate to order disgorgement of ill-gotten gains and/or a civil penalty pursuant to Section 21A of the Exchange Act." (*Id.* ¶¶ I, III) Under the consent judgment, Govender is also "precluded from arguing that he did not violate the federal securities laws," and for the purposes of an SEC motion for the above-listed relief, the court must accept and deem true the allegations in the complaint. (*Id.* ¶ III).

The SEC filed a motion for judgment against Govender on October 31, 2019, requesting disgorgement of $222,788 and prejudgment interest of $56,391.91, as well as a civil penalty of $668,364. (ECF No. 49). Subsequently, the SEC requested leave to file a supplemental submission addressing the Supreme Court's decision in *Liu v. Securities and Exchange Commission*, 140 S.Ct. 1936 (2020). The SEC withdrew its request for disgorgement and prejudgment interest and now seeks only the civil penalty amount from Govender. (ECF No. 55).

## DISCUSSION

"Section 21A of the Securities and Exchange Act authorizes civil money penalties for insider trading up to three times the profit gained or loss avoided because of the illegal act." *Securities and Exchange Commission v. Afriyie*, No. 16-cv-2777, 2018 WL 6991097, at *6 (S.D.N.Y. Nov. 26, 2018) (quoting 15 U.S.C. § 78u-1(a)). Civil penalties are intended both "to punish the individual violator and deter future violations of the securities laws." *Securities and*

*Exchange Commission v. Haligiannis, et al*, 470 F. Supp. 2d 373, 386 (S.D.N.Y. 2007).  "[I]n determining the appropriate penalty, courts generally consider 'the defendant's culpability, the amount of profits gained, the repetitive nature of the unlawful act and the deterrent effect of a penalty given the defendant's net worth.'" *United States Security and Exchange Commission v. Svoboda*, 409 F. Supp. 2d 331, 347 (S.D.N.Y. 2006) (quoting *Securities and Exchange Commission v. Sekhri, et al.*, No. 98 civ. 2320, 2002 WL 31100823, at \*18 (S.D.N.Y. July 22, 2002). Courts also consider "other factors such as whether the defendant is employed in the securities industry; whether the defendant has a prior record of securities violations, and other penalties that arise out of the defendants' conduct." *Id.* (internal citations omitted).

Section 21A defines "profit gained" or "loss avoided" as "the difference between the purchase or sale price of the security and the value of that security as measured by the trading price of the security a reasonable period after public dissemination of the nonpublic information." § 78u-1(e). The Second Circuit has explained that a civil penalty may "be based on the total profit resulting from the violation" and is not limited to the Defendant's personal profit gained or loss avoided. *Securities and Exchange Comm'n v. Rajaratnam*, 918 F.3d 36, 42–43 (2d Cir. 2019). Accordingly, because the Complaint alleged that, as a result of Govender's Sangamo tips, "Fishoff and the others jointly made over \$1.5 million," the maximum penalty the SEC could seek against Govender would be three times that total profit, or \$4.5 million. (Compl. ¶ 4). Instead, the SEC seeks three times the compensation Fishoff allegedly paid Govender for his Sangamo tips.

The SEC argues that this penalty is reasonable given the egregiousness of Govender's conduct, his high degree of scienter, insider trading's inherent, deleterious effect on the market,

and the repetitive nature of Govender's conduct. (ECF No. 49 at 8–9). Additionally, the SEC argues that Govender's precarious financial situation should not mitigate the penalty. (*Id.* 9–11).

In his opposition, Govender challenges the relief sought by the SEC on five grounds. First, he disputes his liability, emphasizing that he was a legitimate biotechnical investing consultant to Fishoff who had no knowledge of improper trades and who never illegally traded in Sangamo securities. (ECF No. 51). Relatedly, Govender emphasizes the weakness of the SEC's case against him, arguing that the only evidence against him is inference and misleading telephone logs. (*Id.*)

Second, Govender disputes the SEC's characterization of the $222,788 wire transfer from Fishoff as ill-gotten gains, or illegally-obtained profits. Only a portion of that money, Fishoff contends, was compensation for his consulting work on Sangamo. The rest was compensation for other legitimate consulting work. (*Id.*)

Third, Govender argues that the relief sought by the SEC is more on par with penalties obtained by the SEC in unrelated cases where the ill-gotten gains were much larger than those alleged in this case. (*Id.* at 8).

Fourth, Govender purports that he does not have the financial resources to pay the money the SEC seeks, and relatedly, that he has suffered enough by virtue of the reputational and professional harm he endured as a result of this litigation. (*Id.* at 9–10, 12).

As a preliminary matter, the SEC is correct that Govender is precluded here from disputing the allegations in the Complaint pursuant to the express terms of the consent judgment. (Consent Judgment ¶ III). However, in considering the factors relevant to determining the amount of a civil penalty, I do find that the SEC's requested penalty is too great.

Because I must accept the Complaint's allegations as true, I must accept that Govender received $222,788 as compensation for providing material, nonpublic information that he knew or should have known or was reckless in not knowing would be used for illegal trading. I also must accept that Govender passed along such information for almost a year. (Compl.¶ 35). Accordingly, Govender's conduct was central to the scheme, egregious, and continuous. These factors, coupled with the fact that the SEC is not seeking disgorgement and prejudgment interest, counsel in favor of a greater civil penalty.

That being said, I do think that Govender's financial situation warrants some mitigation. Govender argues he cannot pay the money the Commission requests. Govender initially provided the SEC with information concerning his financial condition in July 2019. In September 2020, Govender submitted updated financial statements. These documents all were filed under seal and have been reviewed by the Court. In his original submission, Govender asserts he his family had limited funds in their bank accounts and substantial mortgage debt. He asserts that his financial worth is negative several hundred thousand dollars.

In his updated financial statements, Govender elaborated upon his continued to struggle to find employment. He explained, for example, that after numerous failed job interviews, he attempted to start his own business by licensing technology from the National Institute of Health for over $155,000, but that his license was revoked based on the SEC complaint filed in this case. Govender also stated that he believes the SEC is not "interested in fairness in [his] case" and "want to inflict the most [sic] permanent damage to [his] career."

The SEC questions the legitimacy of some of Govender's claimed liabilities. (ECF No. 52). The SEC also argues that I should consider Govender's future ability to pay the penalty. Govender, the SEC asserts is 48, relatively young, and, has told the Court that he anticipates

6

being able to work in the future. (ECF No. 52 at 7–8). Additionally, the SEC points to

Govender's educational background—a Master's degree in chemistry and biophysics—as

evidence of his future earning potential. Govender disputes his future capacity to work, arguing

that this litigation has ruined his professional reputation and made finding employment difficult.

He states he is unemployed currently. (ECF No. 51).

The SEC also emphasizes that Govender failed to submit his full bank records to the

court and argues that the updated submission's reference to the new business venture is

inconsistent with Govender's previous submission stating that he had "limited liquid cash at

hand." The SEC additionally points out that Govender's revised bank statements indicate, that in

July and October 2018, Govender made wire transfers to pay for jewelry and bathroom

construction. Finally, the SEC argues that Govender shows no remorse for his conduct, which

supports the imposition of a higher civil penalty. *See, e.g, SEC v. Coates*, 137 F. Supp. 2d 413,

430 (S.D.N.Y. 2001).

The factors identified by the SEC counsel in favor of a substantial fine but considering

the amount of debt Govender faces as well as the extent to which this action has hindered his

ability to find employment, I think a fine of $445,576, two times Govender's the ill-gotten gains

is appropriate. I have also considered Govender's future ability to pay, and despite his age and

educational background, do credit his assertions regarding his employment struggles.

## CONCLUSION

For the above reasons, judgment shall be entered against Govender in the amount of

$445,576, consisting entirely of civil penalties.

**SO ORDERED.**
Dated: New York, New York
September 28, 2020

_____
Hon. Andrew L. Carter, Jr.
United States District Judge